## JOHN REID and others v. ELI GIFFORD and others.

The complainants having been long seized in fee and in undisputed possession of, lands with a water course running through them, on which they have mills; the defendants can not, by an artificial channel made in their own land, divert the water from its natural course.

In such case, the right of the complainants, being absolute and clear, requires no trial at law, to establish its validity.

The complainants being several proprietors of distinct lands and of separate parts of the water course, have still, such a community of interests in the subject of the suit, that they may join in it.

The true reason for the interposition of equity, in such cases, is, that the remedy at law is imperfect.

In this case, a temporary injunction was granted upon the bill. But upon an explanatory answer, positively denying the injury, the injunction was dissolved.

1825.
25th February.
16th April.

*Rights in water courses.*

THE bill in this cause stated, that the complainants and those under whom they held, were severally seized in fee of certain lands in the county of Washington, through which the outlet of Leigh's lake had flowed from time immemorial: that for more than thirty years last past, they had been in possession of mill seats and mills on that outlet, and on the outlet of McEack-

rons's lake, into which it empties ; and that the complainants individually, and as tenants in common, have erected on those waters various manufactories and mills, and for which the lakes afford a scanty supply of water : and that in the years 1816 and 1817 the defendant Eli Gifford had, upon his own land, cut a subterraneous passage from Leigh's lake, by which he drew off a part of the water sufficient to turn a saw mill which he had erected. From explanations which were made upon the motion hereafter mentioned, it appeared, that the lake is situate on very high land, and that on the side where Gifford's land lies, the water is confined by a narrow rim or mound of earth, from the outer edge of which there is a deep and sudden descent, by means of which the new outlet made by this defendant, was rendered practicable. The bill complained of this use of the water by the defendants as an injury to the complainants in respect to their mills, and prayed to be quieted in their rights to the use of the water in its natural course, and for an injunction. The complainants stated some suits brought in inferior courts, in which some damages had been recovered by them, for the diverting of the water.

1824.

REID
v.
GIFFORD.

MR. CRARY, upon notice given, now moved for an injunction according to the prayer of the bill.

This is a plain case of wrong ; and it is clearly within the principle of those cases in which the court has interfered to restrain waste, and in some instances, trespass.

No negligence or omission is imputable to the complainants. We had no claim to redress till we had suffered an injury ; and while the work was in progress, it could not be known, that it ever would be injurious.

We have prosecuted at law in three different suits, and have recovered some, though not large, damages. But the remedy at law is inadequate.

The jurisdiction to restrain the diverting of water courses is now well established. He cited 2 John. ch. 162. 273. 463. 3 John. ch. 282. 5 John. ch. 101. 1 Mad. ch. 122, 3. 141.

MR. STEVENS for the defendants. This bill contains no statement of any injury to the complainants in any joint capacity ; or at least, a part of the matters complained of, ap-

1825.

REID
v
GIFFORD.

ply to them severally, and not jointly. No injunction will be granted if the bill would be bad on demurrer. 2 Ves. 323. Dick. 677. 1 East. 226. 2 Ves. 486. 2 Anst. 469. And a demurrer may be taken ore tenus, for this cause. 18 Ves. 72.

The act complained of was done more than six years ago, and the complainants have not yet sufficiently established their right at law. 1 Cox. 102. In 6 John. ch. 19, an injunction was denied in this same case, by chancellor Kent.

As to Reid, the bill does not at all allege his right to have been sustained at law.

25th February. THE CHANCELLOR. The bill states, that the complainants and those through whom they claim, have been seized of the water course, upon which their mills are situated, more than thirty years : and the defendants claim no right to this water course. According to the bill, the complainants have a clear title, not disputed by the defendants. The new outlet was made by the defendant Eli Gifford, through his own land ; but he had no right to use his land in such manner, as to deprive others of the enjoyment of their rights. He had no right to divert this water from its natural channel ; that channel and the water flowing through it, being the private property of the complainants.

Some suits at law, have been brought by the complainants for this injury, and they have in all instances, recovered damages ; but their claim to redress in equity, seems to rest upon ground different from that of quieting a possession, where a contested title has been established by sufficient litigation. The right of the complainants, is an absolute and clear title, which requires no trial to establish its validity. It is a title supported by a long possession ; it is not disputed by the defendants ; it is according to the bill, indisputable ; and the violation of it, is continued by the defendants.

It appears, that an application for an injunction, in this case, was made to the late chancellor, in January 1822 ; and that he refused the motion. Reid against Gifford. 6 John. ch. 19. But the facts then presented, were widely different from those stated in this bill. The former bill stated, that the complainants had been in possession of the mill seats and

water works, for the last twenty years; and it did not allege, that they had any other title. As a mere possession for twenty years, does not constitute a title, the injunction was properly refused. The bill now before the court, states a perfect title in the complainants. It alleges, that the complainants are and were seized in fee; and have been possessed of the lands, mills and water course for more than thirty years last past. This is a positive statement of a perfect title; and it renders the case altogether different from the imperfect pretension of right, stated in the former bill. The title stated in this bill being unquestioned and unquestionable, this case is entirely like that of Gardner against Newburgh 2 John. ch. 162. In that case, and in the cases of Belknap against Belknap, 2 John. ch. 463, and Van Bergen against Van Bergen, 3 John. ch. 282, the late chancellor considered the jurisdiction of this court, in cases of this nature; and upon his authority, as well as that of the English books, I am of opinion, that this is a case of equitable jurisdiction.

In many of the adjudged cases, much stress is laid upon length of possession; and in most cases of this nature, the aid of equity, seems to have been given, only in favor of a title long enjoyed in possession. Here, has been a long possession, in concurrence with the title of the complainants.

The complainants are several proprietors of distinct lands and mills, and of separate parts of the natural water course; and the defendants object, that these complainants, having distinct rights, can not join, in this suit. This objection seems more specious than solid. The rights of the several complainants to their respective lands, are indeed, distinct; but the grievance in question, is a common injury to all the complainants. The water in its natural descent from the lake, becomes the property of each of the complainants successively; all the complainants thus have right in the same subject; and the nature of the case, forms a community of interests, in the complainants. One creditor may sue in equity, for himself and other creditors having like rights; and yet the debts demanded are distinct, and arise from separate contracts. The common claim of the different creditors to the same relief, is considered in equity, as one demand; and separate suits are

1825.

REID
v.
GIFFORD.

not necessary. The rule of equity is, that the matters which may be demanded by one suit, must be of the same nature. Mitford 146. This suit is founded on an injury done to all the complainants ; the wrong is done or continued, by all the defendants ; it is a matter of one nature ; and the relief sought by all the complainants, is the same.

As this case stands, the title of the complainants is clear and certain ; their possession has been ancient ; and the defendants without pretence of right, continue the injury. In such circumstances, the sole question, is, whether the remedy shall be given by repeated suits for damages, or by preventing a farther continuance of the wrong. The true reason for the interposition of equity in such cases, is, that the remedy at law, is imperfect, and the remedy of equity, gives effectual justice. Suits at law afford a species of redress ; but as they may have no end, they also afford scope for perverse litigation, which may become as oppressive and vexatious, as the injury itself. Equity gives its remedy by preventing a repetition or continuance of the injury. But this remedy which compels the wrong to cease, is given only where the right is plain, and the redress at law is manifestly inadequate to the ends of justice. In this case, suits at law and damages recovered against the defendants, have failed to produce a discontinuance of the injury.

This decision is made upon the case stated in the bill ; and the injunction now granted, is interlocutory.

Order accordingly.

The defendants afterwards put in their answer, in which they set forth a map of the grounds and waters in question, and insisted that the use of the water by the defendants did not perceptibly affect the mills of the complainants. Among other facts they stated that at seasons of low water, no water whatever passes out of Leigh's lake. They had caused the streams to be surveyed and gauged, and the answer stated several calculations, showing that the water used by the defendants at any time, was very little, compared with that which flowed to the complainants' mills. The answer stated also, that the water had run in the tunnel about four years

before any mills were erected on the same, and that no objection was made by the complainants till since the defendants had placed valuable mills and water works on that tunnel; nor was any objection made while the work of the tunnel was in progress; and that the practicability of such a work had been the subject of frequent public conversation for many years previous. The various facts stated by the answer, seemed to show, that no injury had been sustained by the complainants, or at most that it was very uncertain whether they had been injured by the tunnel.

MR. STEVENS, upon this answer, now renewed the motion to dissolve the injunction.

Mr. CRARY opposed it.

THE CHANCELLOR. The injury alleged by the complainants, is, that the waters of Leigh's lake have been diverted from the natural outlet of the lake, and have been withdrawn from the use of the complainants, through the subterraneous passage made by the defendants. This injury is denied by the defendants, in positive terms; and their denial is explained and supported by various facts and statements. According to the answer, the waters of Leighs' lake are not discharged through the passage described in the bill as the natural outlet of the lake; or if any of those waters pass through that channel, they are discharged only in very small quantities, and at particular times, when they are of no use to the complainants. It is left somewhat uncertain, whether the waters of the stream on which the mills of the complainants are situated, are really diminished, by the subterraneous passage, or not: but the injury alleged in the bill, is positively denied; and the explanations of the defendants, seem to fortify their denial. The injunction must therefore be dissolved.